Tucker, Judge.
According to the principles established in the interlocutory decree of the chancellor, as the foundation of the account between the parties, and of his final decree in the cause, Hawkins is to be debited with Joseph Pannel's bonds, in lieu of which he had taken the bond of Strother, paid off in paper money after Hawkins's death; but not with the bonds of Thomas Fitzpatrick, Alexander Fitzpatrick, Mathew Nightingale, and Adam Woods, which are proved to have been lodged with a lawyer, in convenient time, to bring suit on. But that he ought to be debited with the whole of Conrad Wilhite's debt, which he had in part collected, and with the remainder of John Wheeler's, and Samuel Headman's debts, which were still in the hands of the complainants, when the commissioner made his first report.
Thus far the principles of the decree appear to me to be strictly correct. And so does that part of it which directs the defendants, Berkeley's executors to assign to the plaintiffs such of the obligations as may be produced, and for the money due upon which they are responsible, but so that the defendants shall not be subjected by such assignment to any demand whatsoever.
*121 The only part of tile interlocutory decree, upon which I have any doubt, is that which directs that interest during the war between the king of Great Britain and the people of America, shall not be charged. If this direction be referred to the bonds delivered to Hawkins to collect, there is no principle upon which I can discover, why a debtor, living upon the spot with his creditor, should not pay interest. It is true that he might, by a tender of paper money, have extinguished it, from the time of the tender; and even the principal might, at one time, have been put at hazard by such an unjust procedure on the part of the debtor. But I cannot think that a debtor is entitled to the extinguishment of interest merely because he has not been unjust. If it be referred to money, from time to time, collected by Hawkins, if there were a balance due from him at any time in specie, or specie value, he was bound by the tenor of his obligation to pay it over immediately: if paper money was forced upon him in a depreciated state, he ought to have paid it over as soon as possible, to prevent further depreciation before it should get to Berkeley’s hands; for whose use it was received. This part of the interlocutory order, therefore, appears to me to have been erroneous, and the final decree being made upon the foundation of that order should, I conceive, for that cause be reversed.
No notice is taken in the interlocutory order of two sums of £100, and £100. 4. for which receipts were given by Berkeley to Hawkins, April 10th, 1777, and April 10th, 1778. For which Berkeley promises to account with interest from those dates respectively. From this circumstance, I am led to believe, that it was perfectly understood by both parties, that those sums should not be considered as paid by Hawkins, on account of his collections, to Berkeley ; but as a loan in paper money, for which Hawkins was to receive payment in the same currency, with interest. These sums then should, I apprehend, have been charged to Berkeley as loans, at the value fixed by the scale of depreciation; and, if brought into the account at all, should be credited to *122 Hawkins at that rate only, and not as a specie payment, as they are charged to Berkeley in the commissioner’s report; which being confirmed by the final decree of the chancellor, there is error I apprehend in the decree for this article also.
In casting my eye over the commissioner’s report, in the statement of interest, on account No. 1,1 find that, at the time of giving bis bond, he had in his hands £758. 7. 11.; of which he only paid £ 331. 14. 10. to Berkeley, leaving a balance of £283. 19. in his hands; and that, from that period till the time of Hawkins’s death, the balance in his hands (if we except the two sums of £100, and £ 100. 4. paper money) was never under £ 300, or £ 350, and, after deducting those sums as specie, there still remained a balance of £ 174. 11. 8^-. due from him at the time of his death. But if those sums be credited only at their specie value, the balance in his hands, at that time, was upwards of £ 320.
I have dwelt upon this part of the case, as preparatory to what I deem it necessary to say respecting the liability of the executors of Hawkins under this bond. In case of the breach of the bond by Hawkins himself, there never could be any doubt of the liability of his executors. In an action at law, affirmed by this court, it appears from the record now before us, that a jury has determined that there was a breach of the condition, for which they have assessed damages to £914. 15. against the executors. This court must presume that the breaches were properly assigned in that suit; and that this court have already settled the point, that however the assignment of the breaches may have been made in that suit, the executors were, at law, liable to make compensation out of Hawkins’s estate for them; and when the complainants come into a court of equity for relief against that judgment, it appears, by their own accounts, that Hawkins had been guilty of a breach of the condition of the bond in his lifetime, for which the executors were liable at law; and as they have come into a court of equity for relief, they must submit to a fair and just account, not only for their testator’s transactions, but for their own as his representatives; *123 it being, as his representatives, that they seek relief. The question whether the executors were compellable to execute the trust, which it is contended (and perhaps properly in legal strictness, Barker v. Parker, 1 T. Rep. 287,) they were not bound to execute, it being altogether personal to Hawkins, seems not to be open for them to urge in the present state of the case.
In expressing my assent to that part of the interlocutory decree which declares that Hawkins is not liable for those bonds which were put into the hands of an attorney to bring suit upon in due time, I wish it to be understood as considering him entitled to a full credit for the principal and interest of those bonds | but if he received any part of the money due upon those bonds, after putting them into an attorney’s hands to collect, that he is chargeable with that money, and interest thereon, from the time that the attorney, by whom it was received, should have paid it over to him. This circumstance may render it necessary that a separate account, as to those bonds, should be taken; debiting the executors of Berkeley with the amount paid into the attorney’s hands, and for which the attorney must be liable to them, and crediting them, with the sums received from the attorney, with interest thereon, until paid over to Mr. Berkeley, or his executors. And for any loss sustained upon any of these bonds (excepting Strother’s bond, improperly taken in lieu of Pannel’s from the number) Hawkins is not to be deemed liable: and for any paper money which he may have bona fide received (except on account of Strother’s bond) he ought to receive credit as for specie, if paid over to Berkeley immediately, or in convenient time.
The unfair conduct of Hawkins to Berkeley at the time of the payment made by him when he gave his bond, and when he paid Berkeley £ 203. 19. 10. short of what he then actually had in his hands will appear from this circumstance. Berkeley had agreed to release the obligors from 18 months interest upon all bonds which should be punctually paid on the first of May j or which should even be paid *124 on the first of July. The. interest on this sum paid by the obligors to Hawkins was therefore forever gone from Berkefey • yet did Hawkins most unconscientiously retain this large sum in his hands, the interest of which Berkeley had given up to the obligors in consideration of a punctual payment to be made by them; and which they did make accordingly ; but by which he was never, in any respect, benefited.
On these grounds, I am of opinion that the chancellor’s decree, except as to such parts as I have before expressed my approbation of, should be reversed; and that the cause be sent back to that court, with directions that a new account be stated between the parties upon the following principles :
1. That Hawkins be debited for the whole amount of the bonds taken in December 1771, with interest from the date, subject to the exceptions and credits hereafter mentioned.
2. That he be debited with all sums of money which be may have received from any attorney on account of the bonds put into the hands of such attorney to bring suit on, and for which bonds he may have been credited; and for all sums he may have received from the debtors themselves on account of such last mentioned bonds, for the whole amount of which he may have received credit, on account of such delivery to an attorney. A separate account of which bonds, with the monies received by him from the attorneys, or the obligors themselves, is to be stated; and all such monies are to be accounted as payments on account of interest due upon such bonds, except in those cases in which the payment made shall be found to exceed the interest then due. And upon all such monies he is to be charged with interest from the receipt thereof, until the same shall have been paid over to Berkeley, or to his executors.
3. That he be credited for one half of the expenses of the sales of the negroes; to be deducted from the principal of the said bonds.
4. That all payments made by him before the 4th of June, 1773, be deducted from the principal of the bonds; *125 it being presumed, that the same were punctually paid by the obligors.
5. That all payments made on or before the first of July, except such as may have been made before the 4th of June in that year, be considered as principal and interest, from the 1st of May, 1773; and the interest on such payment is to set off against the interest accruing on the aggregate amount of the bonds, from the 1st of May, 1773, to the time of payment.
6. That his commissions on those payments be credited at the same time as the payments themselves, and are to be considered as principal, or interest, in the same manner and in the same proportion as the sums paid may be so considered.
7. That all payments made by him after the first day of July, 1773, be considered as payments on account of principal and interest on the aggregate of the bonds (those put into the hands of an attorney to bring suit on, not being included under this head) with interest on the same from the date, December 13th, 1771, to the time of the last preceding payment, made by him; or to the end of the last preceding quarter in every year to commence on the 14th of December.
8. That he be credited with the amount of the principal sum mentioned in all bonds put into the hands of an attorney to bring suit on, (viz. those enumerated in the chancellor’s decree, together with those of David Bell and Robert Page; one of which appears to have been received by George Nicholas, and with regard to the other he does not seem chargeable with any fault) which is to be deducted from the aggregate amount of the bonds which he received. And for any monies received by him, or his executors, either from the attorneys, or the obligors, on account of such bonds, he is to be charged in a separate account, as directed under the second head.
9. That paper money bona fide received by him, and paid over to Berkeley in convenient time, in discharge of *126 any bond, except Pannel’s bonds, is to be regarded as specie. •
10. That he is not to be credited with the two sums of £ 100, and £ 100. 4. paid in April 1777, and April 1778, as specie j but those sums are to be reduced by the scale of depreciation, and considered as principal, the parties having agreed that they should carry interest.
11. That he is to be credited with the amount of all bonds heretofore returned to Berkeley, or his executors.
12. That, if upon a general account, stated upon these principles, there shall appear to be any balance due to Berkeley's estate, the injunction is to be dissolved for so much with interest thereon from the date of the judgment, until paid and costs. But, if there be no balance dpe,.then the injunction to be perpetuated ; and if a balance be due Hawkins's estate, the defendants to pay the same with interest and costs.
On one point I feel a doubt what direction should be given; whether Hawkins should be allowed a commission on the bonds put into the hands of an attorney to bring suit on, having considered that circumstance, where it was done in due time, to discharge him from all responsibility as to those bonds, I incline to suppose he ought not to receive any commission on the amount of the bonds, but merely on the monies he may have received on account of them.
The rest of the judges, thought that the chancellor’s decree was mainly right; but erroneous, 1. In excluding interest during the revolutionary war ; 2. In allowing the payments of £ 100, on the 10th of April, 1777, and of £ 100. 4. on the 10th of April, 1778, as specie instead of paper money ; 3. In not charging Hawkins with interest on monies received before the 1st day of July, 1773, and not paid over» And the following is the decree that was entered by the court of appeals, in the cause :
“ This day came the parties, by their counsel, and the court, having maturely considered the transcript of the re *127 cord of the decree aforesaid, is of opinion, that the said decree is erroneous in this, That, in the account whereon the decree is founded, interest for eight years, during the American war with Great Britain, is excluded; also, in crediting the appellees nominally, the sum of one hundred pounds lent the appellants’ testator 10th of April, 1777, and for one hundred pounds four shillings, 10th April, 1778, this court being of opinion that those sums ought to be reduced according to the scale of depreciation by law established. And also that Hawkins is in equity chargeable with interest on all sums, by him, received, on or before the 1st day of July, 1773, and not paid over to Berkeley within a reasonable time, from the time the debtors would have been bound to pay interest, if they had not been punctual in their payments. Therefore it is decreed and ordered that the same be reversed and annulled, and that the appellees out of the estate of their testator, in their hands to be administered, if so much thereof they have, but if not, out of their own estates, pay, to the appellants, their costs, by them, expended in the prosecution of their appeal aforesaid here.”
“ Which is ordered to be certified to the superior court of chancery directed, by law, to be holden in Richmond, to have the accounts reformed, and a final decree entered according to the principles of this decree.”